**No. 24-1559**

## UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

————————

HEATHER SCHROEDER and MISTY TANNER,
*Plaintiffs-Appellees*,

v.

PROGRESSIVE PALOVERDE INSURANCE COMPANY and PROGRESSIVE
SOUTHEASTERN INSURANCE CO.,
*Defendants-Appellants*.

————————

On Appeal from the United States District Court for the Southern
District of Indiana, No. 1:22-cv-00946-JMS-MKK,
The Honorable Jane Magnus-Stinson

————————

## CORRECTED REPLY BRIEF
## FOR DEFENDANTS-APPELLANTS

————————

Paul Alessio Mezzina
Amy R. Upshaw
Christine Carletta
KING & SPALDING LLP
1700 Pennsylvania Avenue NW
Washington, DC 20006

Julia C. Barrett
KING & SPALDING LLP
500 West 2nd Street, Ste. 1800
Austin, TX 78701

Nicole Bronnimann
KING & SPALDING LLP
1100 Louisiana Street, Ste. 4100
Houston, TX 77002

Jeffrey S. Cashdan
Zachary A. McEntyre
James Matthew Brigman
Allison Hill White
Erin Munger
KING & SPALDING LLP
1180 Peachtree Street NE
Suite 1600
Atlanta, GA 30309
(404) 572-4600
jcashdan@kslaw.com

*Counsel for Defendants-Appellants*

July 22, 2024

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.........................................................................ii

INTRODUCTION ....................................................................................1

ARGUMENT ...........................................................................................3

I.   Plaintiff's reliance on the abuse-of-discretion standard and her claims of "consensus" are misplaced .........................................3

II.  Individualized issues of valuation predominate over any common questions ..............................................................................9

    A.   As Plaintiff concedes, liability requires proof of the ACV of each class member's vehicle......................................10

    B.   Standing also requires proof of the ACV of each class member's vehicle ...................................................................14

    C.   Plaintiff's attempts to avoid individualized inquiries into ACV are unavailing .........................................................16

III. The legitimacy of PSAs is not a common question ........................28

IV.  There is a fundamental intraclass conflict and Plaintiff is not an adequate representative......................................................33

CONCLUSION ......................................................................................36

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## Cases

*Atlas Constr. Co. v. Ind. Ins. Co.*,
  309 N.E.2d 810 (Ind. Ct. App. 1974) .................................................. 12

*Bourque v. State Farm Mut. Auto. Ins. Co.*,
  89 F.4th 525 (5th Cir. 2023) .............................................................. 23

*Brown v. Progressive Mountain Ins. Co.*,
  2023 WL 7219499 (N.D. Ga. Aug. 3, 2023) ........................................ 8

*Dinerstein v. Google, LLC*,
  73 F.4th 502 (7th Cir. 2023) ......................................................... 12, 15

*Drummond v. Progressive Specialty Ins. Co.*,
  2023 WL 5181596 (E.D. Pa. Aug. 11, 2023) .................................... 8, 9

*Drummond v. Progressive Specialty Ins. Co.*,
  No. 23-8035 (3d Cir. Feb. 8, 2024), Dkt. 27-1 .................................... 5

*Eddlemon v. Bradley Univ.*,
  65 F.4th 335 (7th Cir. 2023) .............................................................. 3

*Henson v. Progressive Premier Ins. Co.*,
  2024 WL 3051264 (E.D.N.C. June 10, 2024) ............................ *passim*

*Huber v. Simon's Agency, Inc.*,
  84 F.4th 132 (3d Cir. 2023) ............................................................... 16

*In re State Farm Fire & Casualty Co.* ("*LaBrier*"),
  872 F.3d 567 (8th Cir. 2017) ............................................................. 18

*In re State Farm Mut. Auto. Ins. Co.*,
  No. 23-508 (6th Cir. Apr. 30, 2024), Dkt. 42 ..................................... 5

*Kartman v. State Farm Mut. Auto. Ins. Co.*,
  634 F.3d 883 (7th Cir. 2011) ................................................... 1, 10, 12

*Kroeger v. Progressive Universal Ins. Co.*,
  2023 WL 9059523 (S.D. Iowa Nov. 20, 2023) ......................... *passim*

*Lara v. First Nat'l Ins. Co.*,
  25 F.4th 1134 (9th Cir. 2022) ........................................................ 11, 20

*Lewis v. GEICO*,
  98 F.4th 452 (3d Cir. 2024) ................................................................ 15

*McFields v. Dart*,
  982 F.3d 511 (7th Cir. 2020) ................................................................ 3

*Mullins v. Direct Digital, LLC*,
  795 F.3d 654 (7th Cir. 2015) .............................................................. 27

*Orr v. Shicker*,
  953 F.3d 490 (7th Cir. 2020) ................................................................ 3

*Prudhomme v. GEICO*,
  2022 WL 510171 (5th Cir. Feb. 21, 2022) ........................................... 34

*Sampson v. United Services Automobile Ass'n*,
  83 F.4th 414 (5th Cir. 2023) ............................................ 21, 22, 23, 34

*Signor v. Safeco Ins. Co.*,
  72 F.4th 1223 (11th Cir. 2023) ..................................................... 31, 32

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) ........................................................................... 12

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) ........................................................................... 14

*United States v. Doe Corp.*,
  59 F.4th 301 (7th Cir. 2023) ................................................................ 3

*Volino v. Progressive Cas. Ins. Co.*,
  2023 WL 2532836 (S.D.N.Y. Mar. 16, 2023) .................................... 6, 26

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ....................................................... 2, 27, 28, 29

## Statutes

28 U.S.C. § 1332(d) ............................................................................. 13

**Other Authorities**

1 McLaughlin on Class Actions § 4:19 (20th ed.) ....................................27

Defts.' Pretrial Mem. of Law,
    *Volino v. Progressive Cas. Ins. Co.*,
    No. 1:21-cv-6243 (S.D.N.Y. May 31, 2024), Dkt. 360 ........................27

Pls.' Mot. in Limine to Exclude Evidence of Absent Class
    Members' Claims, *Volino v. Progressive Cas. Ins. Co.*,
    No. 1:21-cv-6243 (S.D.N.Y. May 7, 2024), Dkt. 331 .........................27

## INTRODUCTION

The reasons why the district court abused its discretion are straightforward. As Progressive's brief explained, Plaintiff brings "straightforward claims for underpayment of insurance benefits." *Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 893 (7th Cir. 2011). Those claims require proof that Progressive paid each class member less than the actual cash value of that class member's vehicle, and individualized inquiries are needed to determine ACV. The district court erred as a matter of law when it declared that this case did not turn on "whether Progressive paid ACV to putative class members" (which it recognized would "be a problem" for predominance), SA-22-23, and a district court that gets the law wrong always abuses its discretion.

Plaintiff's brief offers a confusing jumble of responses but ultimately concedes most of the key points in Progressive's argument. For example, she agrees that she cannot prevail without proving that "application of the PSA resulted in payment of less than ACV." Resp. Br. 43. She thus does not even try to defend the legally erroneous premise on which the district court relied when finding predominance. She also agrees that "vehicle valuations are individualized." Resp. Br. 25. And she

admits that if it were necessary to determine ACV for each class member, "class treatment would likely be inappropriate." Resp. Br. 28.

Plaintiff's main argument is that she can avoid these individualized ACV determinations by relying on the Mitchell valuations with the PSAs removed as "admissible evidence" of ACV. Resp. Br. 27-28. But she does not dispute that there are many other legitimate, individualized valuation methodologies that can also be used as evidence of ACV—a point she conceded below, as the district court recognized. SA-15-16. And she does not dispute that Progressive has a due-process right to argue, for each class member, that it paid ACV as determined by another legitimate methodology; indeed, the words "due process" do not appear once in Plaintiff's brief.

As other courts have recognized, even assuming Plaintiff can point to the Mitchell valuations as some evidence of ACV, Progressive's right to present individualized valuation evidence for every class member makes a classwide trial impossible. "[A] class cannot be certified on the premise that [defendant] will not be entitled to litigate its … defenses to individual claims." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 367 (2011). Plaintiff has no meaningful response. For this reason and others

discussed below, the Court should reverse the district court's class-certification order.

## ARGUMENT

### I.    Plaintiff's reliance on the abuse-of-discretion standard and her claims of "consensus" are misplaced.

Plaintiff spends much of her brief emphasizing that class-certification decisions are reviewed for abuse of discretion. But "[a]lthough this is a deferential standard, it must also be exacting because a decision regarding certification can have a considerable impact on the playing field of litigation." *Orr v. Shicker*, 953 F.3d 490, 497 (7th Cir. 2020) (quotation marks omitted) (vacating class certification); *accord Eddlemon v. Bradley Univ.*, 65 F.4th 335, 338 (7th Cir. 2023). Importantly, if "the district court bases its discretionary decision on an erroneous view of the law or a clearly erroneous assessment of the evidence, then it has necessarily abused its discretion." *McFields v. Dart*, 982 F.3d 511, 515 (7th Cir. 2020) (quotation marks omitted); *see also United States v. Doe Corp.*, 59 F.4th 301, 304 (7th Cir. 2023) ("A court abuses its discretion when it bases its decision on a legal error.").

Here, as detailed in the opening brief and *infra*, the district court abused its discretion by basing its certification decision on legal error.

Most fundamentally, the district court erred in concluding that Plaintiff and proposed class members could establish standing, a breach of contract, and damages without an individualized assessment of the value of each class member's vehicle. As Progressive's brief explained (at 32-34), despite initially recognizing that this case "turns generally on" whether Progressive "violated its contractual obligation to pay the proposed class members the ACV of their vehicles," the court then perplexingly held that the issue in this case is *not* "whether Progressive paid ACV to putative class members" and *rejected* Progressive's argument "that it only breached the policy if it ultimately paid less than ACV." SA-14-15, SA-22-23 (quotation marks omitted). Plaintiff does not even try to defend the district court's flawed analysis, and the court obviously did not have "discretion" to overlook the central issue in the case: whether Progressive underpaid each class member.

Despite this, Plaintiff insists there can be no abuse of discretion because other district courts have granted class certification in similar cases. But a district court has no discretion to misapply the law, regardless of how many other courts have stumbled into the same error.

And contrary to Plaintiff's overblown claims of "consensus," the district courts that have addressed claims like Plaintiff's are deeply divided.

No appellate court has endorsed Plaintiff's theory of class certification, and the Third and Sixth Circuits—in addition to this Court—have granted interlocutory review of orders certifying similar classes. *See Drummond v. Progressive Specialty Ins. Co.*, No. 23-8035 (3d Cir. Feb. 8, 2024), Dkt. 27-1; *In re State Farm Mut. Auto. Ins. Co.*, No. 23-508 (6th Cir. Apr. 30, 2024), Dkt. 42.

And at the district court level, there is no consensus. District courts around the country continue to deny class certification for materially identical claims. *See, e.g.*, *Henson v. Progressive Premier Ins. Co.*, 2024 WL 3051264 (E.D.N.C. June 10, 2024); *Ambrosio v. Progressive Preferred Ins. Co.*, 2024 WL 915184 (D. Ariz. Mar. 4, 2024), *pet. granted*, No. 24-1633 (9th Cir. Apr. 26, 2024); *Kroeger v. Progressive Universal Ins. Co.*, 2023 WL 9059523, at *6 (S.D. Iowa Nov. 20, 2023).

Moreover, a closer look at the first decision that granted class certification for these claims—*Volino v. Progressive Casualty Insurance Co.*, 2023 WL 2532836 (S.D.N.Y. Mar. 16, 2023)—reveals the genesis of the legal error that has infected many later decisions, including the

decision below. To manufacture a common question, the *Volino* plaintiffs claimed they could prove that PSAs were "categorically illegitimate" because used cars virtually never sell for less than list price. *Id.* at *2, *7, *10. Without holding an evidentiary hearing or argument, and in a decision without record citations, the district court certified the proposed classes. *Id.* at *13. Despite acknowledging that the PSA *was* sometimes accurate and that "some class members might have received the same amount or more than they would have had Progressive used the ultimate selling price of those same vehicles," the district court accepted Plaintiffs' contention that they could establish on a classwide basis "that no PSA should have been applied." *Id.* at *8. The court also accepted Plaintiffs' argument that there would be no need to perform an "individual valuation[] of each class member's vehicle" because Plaintiffs could use "Progressive's own calculations" "without the PSA" as definitive proof of actual cash value. *Id.* at *8-10.

As the recent decision in *Henson* explains, the analysis in *Volino* contained at least two fundamental errors. First, the supposedly common question of whether the PSA is "baseless" or "must be excised" is not "outcome-determinative"—*i.e.*, not capable of driving resolution of the

litigation—because regardless of the answer, "the court and jury would still need to conduct an individualized inquiry to determine whether each Plaintiff received less than ACV." 2024 WL 3051264, at *10 (cleaned up). And second, the *Volino* court's conclusion that the Mitchell valuation without the PSA could suffice as common evidence of ACV and negate the need for individualized inquiries improperly "glossed over" Progressive's due-process right to introduce alternative valuation evidence. *Id.*

The *Henson* court further explains that Plaintiff's theory "presupposes that Progressive would not be permitted to offer counterproof of ACV for each class member." *Id.* "[T]he problem with this theory" is that "there are any number of permissible methods for Progressive to present proof of ACV, and due process requires that they have the opportunity to argue in support of those different methods." *Id.* at *10-11. Progressive cannot be "bound by Plaintiffs' proposed methodology when alternatives are available," and there is thus no way to avoid the individualized inquiries necessary to determine whether Progressive paid each class member less than the ACV of their particular vehicle. *Id.* at *10; *accord Ambrosio*, 2024 WL 915184, at *7 ("[D]etermining whether Plaintiffs were paid less than ACV … would

require the Court, and a jury, to look at not just the Mitchell valuation, but also several other valuations to determine whether *each individual Plaintiff* was paid below market."); *Kroeger*, 2023 WL 9059523, at *7 ("[I]n a situation where there is no required formula for how to calculate 'market value' in Progressive's policy or under [state] law … , the question of breach must be evaluated on a policyholder-by-policyholder basis.").

The legal errors in *Volino* served as a flawed foundation for courts considering the same claims. The next two decisions relied on *Volino* to grant class certification with no meaningful independent analysis. *See Brown v. Progressive Mountain Ins. Co.*, 2023 WL 7219499, at *8 (N.D. Ga. Aug. 3, 2023); *Drummond v. Progressive Specialty Ins. Co.*, 2023 WL 5181596, at *9, *11-12 (E.D. Pa. Aug. 11, 2023), *pet. granted*, No. 23-8035 (3d Cir. Feb. 8, 2024). And the district court here relied on all three of those decisions, including when it disposed of the critical predominance issue with a single paragraph of barebones analysis and a citation of *Drummond*. SA-22-23. That multiple courts have overlooked the flaws in Plaintiff's theory does not preclude reversal; rather, these decisions

demonstrate a snowballing legal error that this Court should correct before it gains any more momentum.

Other decisions addressing class certification for similar claims show not a consensus, but a deep divide. On one side are decisions like *Kroeger*, *Henson*, and *Ambrosio*, which have focused on what the contract requires—payment of ACV—and recognized that proving a breach requires individualized inquiries into the value each class member's vehicle. *See, e.g.*, *Kroeger*, 2023 WL 9059523, at *6 ("Progressive's use of [PSAs], standing alone, does not mean there has (or has not) been a breach in any particular case of Progressive's contractual duty" to pay ACV). On the other side are decisions like *Volino* and the decision below, which have ignored on-point appellate precedent and mistakenly accepted Plaintiff's theory that "the use of PSAs either did or did not violate the contract" regardless of whether a class member received ACV. SA-15 (quoting *Drummond*, 2023 WL 5181596, at *9). Repetition of this error does not make it reasonable or any less an abuse of discretion.

## II. Individualized issues of valuation predominate over any common questions.

Individual issues predominate because liability and standing depend on whether Progressive paid class members less than ACV, and

Plaintiff's strategies for avoiding individualized ACV determinations are unavailing.

### A.   As Plaintiff concedes, liability requires proof of the ACV of each class member's vehicle.

Progressive demonstrated (at 28-35) that liability turns on whether Progressive paid each class member less than ACV. The policy says nothing about whether Progressive may use any particular adjustment to estimate ACV; it requires only that Progressive pay "actual cash value" and clarifies that "actual cash value" is "determined by the market value, age, and condition of the vehicle at the time the loss occurs." A-48-49. Plaintiff's claim is that Progressive underpaid her and other proposed class members. Therefore, "[i]f a given policyholder was fully compensated for the damage … then [the insurer] will have satisfied its contractual obligation *regardless* of" the "standard [used] to assess the damage." *Kartman*, 634 F.3d at 890.

Plaintiff concedes that class members cannot establish liability without proving that Progressive paid them less than the ACV of their respective vehicles. For example, she says her claim is "that Progressive breached the contract … by underpaying ACV as a factual matter." Resp. Br. 45. She also says the Ninth Circuit's statement that "unless the

plaintiffs showed underpayment of ACV, they 'cannot win on the merits'" is "true" and agrees that she "[can]not prove a breach of contract without proving underpayment." Resp. Br. 27 n.9 (emphasis omitted) (quoting *Lara v. First Nat'l Ins. Co.*, 25 F.4th 1134, 1139 (9th Cir. 2022)); *see also, e.g.*, Resp. Br. 17 ("[T]he issue is the determination of ACV."); Resp. Br. 43 ("[I]f a Plaintiff proves application of the PSAs constituted a breach, it would necessarily be because she proved application of the PSA resulted in payment of less than ACV").

Despite these concessions, Plaintiff elsewhere appears to contend that Progressive had two distinct contractual obligations—"to pay ACV" *and* "to determine ACV based on market value." Resp. Br. 22-23, 40-41. To the extent Plaintiff is suggesting that Progressive can be liable if it paid a class member the right amount (or more) but "determine[d]" that amount using a flawed methodology, she is mistaken.

First of all, even if the use of a flawed methodology standing alone (*i.e.*, without evidence of resulting underpayment) could somehow be construed as a breach of contract, such an alleged breach would not support Article III standing to sue. This Court has made clear that a plaintiff "cannot simply allege a bare breach of contract, 'divorced from

11

any concrete harm, and satisfy the injury-in-fact requirement of Article III.'" *Dinerstein v. Google, LLC,* 73 F.4th 502, 519 (7th Cir. 2023) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)).

In any event, the use of a supposedly flawed methodology standing alone is *not* a breach of contract. As *Kartman* recognized, an insurance policy is not like a "show your work" high-school math test, where a passing grade requires both the right answer *and* the right reasoning. *See* 634 F.3d at 890 ("Insurance entails a promise to pay covered losses, not a covenant to use a particular standard for evaluating property damage."). Otherwise Progressive could be liable for using a methodology that systematically *overvalued* class members' vehicles.

The policy does not require that absurd result. Plaintiff's proposed distinction between "actual cash value" and "market value" is meaningless under Indiana law. *See Atlas Constr. Co. v. Ind. Ins. Co.*, 309 N.E.2d 810, 814 n.2 (Ind. Ct. App. 1974) ("Indiana case law has equated actual cash value with fair market value."). Plaintiff does not really dispute this. She argues (at 40) only that the policy uses "market value" to mean market value *before* age and condition are taken into account, and "ACV" to mean market value *after* age and condition are accounted

for. But that does not change the fact that determining *either* ACV *or* market value requires individualized valuation evidence. *See* Progressive Br. 49-51; *Kroeger*, 2023 WL 9059523, at *6; *Henson*, 2024 WL 3051264, at *10.

In the end, Plaintiff concedes (at 41-42) that the "two issues [of ACV and market value] run together" and "are inextricably linked." So Progressive cannot somehow have breached its contract with a class member despite paying that class member ACV. Liability does not depend on the abstract question of whether PSAs are a valid tool for estimating ACV (or market value) as a general matter. Rather, as Plaintiff acknowledges, this case is about alleged underpayment, and liability depends on whether Progressive paid each insured the actual cash value of their vehicle.[1]

Accordingly, the district court's assessment of predominance— which rested on the erroneous premise that the issue in this case was *not*

---

[1] In addition, if Plaintiff's claim really were that Progressive breached its contract by using a flawed methodology, regardless of whether it underpaid any given class member, it is not clear how that claim could support federal jurisdiction under 28 U.S.C. § 1332(d). For the matter in controversy to exceed $5,000,000, as required by that provision, Plaintiff must be claiming that class members were underpaid and not just that they are entitled to nominal damages for use of an improper methodology.

"whether Progressive paid ACV to putative class members," SA22-23—
was legally erroneous and thus an abuse of discretion.

## B.  Standing also requires proof of the ACV of each class member's vehicle.

Plaintiff's concessions make clear that proof that each class
member was paid less than ACV is critical to establishing liability, and
so the Court need not decide whether such proof is also critical for class
members' Article III standing. But as Progressive explained (at 31-32),
underpayment is necessary for standing too. *See TransUnion LLC v.
Ramirez*, 594 U.S. 413, 431 (2021) ("Every class member must have
Article III standing.").

Plaintiff tries to sidestep Article III by insisting (at 21-22) that
whether class members were paid ACV goes only to the merits, not
standing. Plaintiff would be correct *if* she were offering to prove that each
class member was paid less than ACV. In that case, her theory of liability
would align with a real-world injury, and the fact that class members
might lose on the merits would not affect their standing.

But Plaintiff is *not* offering to prove underpayment for every class
member. Instead, she is offering to prove that "imposing a PSA is
inconsistent with market realities and appraisal standards." Resp. Br. 5-

7. She contends that any valuation methodology that includes a PSA is illegitimate, and she wants the court to infer from that supposed methodological flaw that every class member must have been underpaid and therefore must have suffered an Article III injury.

But that inference does not follow. Even if the PSA were flawed, that would not mean any given class member was paid less than ACV. *See Kroeger*, 2023 WL 9059523, at *6; *Henson*, 2024 WL 3051264, at *10. Individualized inquiries are thus necessary to determine whether each class member is alleging a cognizable injury. *See Lewis v. GEICO*, 98 F.4th 452, 459-61 (3d Cir. 2024) (where plaintiffs challenge the validity of an adjustment in an auto insurer's valuation methodology, "treat[ing] the [challenged] adjustment alone as a harm … would impermissibly divorce [plaintiffs'] standing to sue from any real-world financial injury"). And even if the use of a flawed methodology standing alone could somehow be construed as a breach of contract, "a breach of contract alone—without any actual harm—is purely an injury in law, not an injury in fact," and does not provide standing to sue. *Dinerstein*, 73 F.4th at 522.

The district court thus abused its discretion in failing to consider standing at all in evaluating predominance. *See Huber v. Simon's Agency, Inc.*, 84 F.4th 132, 157 (3d Cir. 2023) (district court erred in failing to consider "how individualized evidence of unnamed class members' standing would affect the balance of common versus individual issues").

## C.    Plaintiff's attempts to avoid individualized inquiries into ACV are unavailing.

As explained above, Plaintiff acknowledges (at 46) that her claims require proof that Progressive "underpaid ACV as a factual matter" for each class member. She also does not dispute that determining a vehicle's ACV ordinarily requires an individualized inquiry. *See, e.g.*, Resp. Br. 25 ("To be sure, vehicle valuations are individualized."); Resp. Br. 33 ("Plaintiff agrees that vehicles must be individually valued."); Resp. Br. 28 (if ACV had to be "recalculated from the ground up, class treatment would likely be inappropriate"). The court below likewise recognized that determining "whether Progressive paid ACV to putative class members" would require individualized inquiries, and would therefore "be a problem" for predominance. SA-22-23.

While acknowledging the individualized nature of the ACV inquiry, Plaintiff appears to make two arguments for why such individualized

inquiries are not necessary in this case. First, although it is not entirely clear, she may be arguing (at 28-29) that ACV must be calculated according to a "prescribed formula." Second, she argues (at 33) that she can rely on the Mitchell valuations of class members' vehicles with the PSAs removed "as evidence of ACV." Neither argument avoids the need for individualized inquiries.

### 1.    Plaintiff cannot avoid individualized ACV determinations by using a "formula."

Plaintiff concedes (at 27) that her "claim isn't that Progressive must use a particular vendor or formula." Yet, confusingly, she also argues (at 28-29) that "Progressive *is* required to calculate ACV based on a 'prescribed formula'—the 'market value, age, and condition' of the totaled vehicle at the time of loss."

To the extent Plaintiff contends that she can avoid individualized ACV determinations by using that so-called "formula" to calculate ACV for every class member, she is wrong as a matter of law. The policies at issue here do not preclude consideration of a PSA; nor do they specify a "formula" that could be applied on a classwide basis to mechanically calculate either ACV or market value. Rather, as in *In re State Farm Fire & Casualty Co.* ("*LaBrier*"), 872 F.3d 567 (8th Cir. 2017), the policies do

not specify what factors can be considered in assessing market value, and therefore whether Progressive's methodology produced an "unreasonable estimate" of the value of damaged property "may only be determined based on all the facts surrounding a particular insured's … loss." *Id.* at 577.

### 2. Plaintiff cannot avoid individualized ACV determinations by offering the Mitchell valuations as "evidence" of ACV.

Plaintiff's main argument (at 27-28) is that she can avoid individualized ACV inquiries because the Mitchell valuations with the PSAs removed "constitute[] admissible evidence of value." As other courts have held, Plaintiff is wrong to suggest that the mere existence of *some* common evidence of ACV eliminates the need for an individualized determination of the ACV of each class member's vehicle.

Even assuming the Mitchell valuations are some evidence of ACV, Plaintiff does not dispute that there are other legitimate methodologies that would yield different valuations. As the district court recognized, and as Progressive pointed out repeatedly in its opening brief (*e.g.*, at 9, 19, 35, 53), "Plaintiff[] agree[s] … that there are many acceptable valuation methodologies, none of which necessarily is compelled by the

Progressive policies." SA-15-16. Plaintiff does not contest this point—instead, she once again concedes (at 27-28) that her policy does not specify a methodology for calculating ACV. The highly general truism that ACV should be determined based on "market value, age, and condition," A-49, does not limit Progressive to any particular methodology for determining ACV or market value.[2]

Plaintiff likewise does not dispute that even if the Mitchell valuations are some evidence of ACV, valuations produced using other methodologies are *also* relevant evidence of ACV. Therefore, in any trial on liability, Progressive would be entitled to introduce—and jurors would be entitled to consider—other individualized vehicle valuations in determining whether each class member was paid less than ACV. Treating the Mitchell valuation without the PSA as *one* measure of ACV would not make these individualized inquiries disappear, because

---

[2] Additionally, the evidence presented to the district court shows that the Mitchell valuations without PSAs would not even be an acceptable measure of ACV. Progressive's experts explained that Mitchell cannot simply "back out" the PSA from a given report because subtracting the PSA affects other adjustments, such as the condition adjustment. A-262 ¶ 86 n.149. Even Plaintiff's expert, Dr. Michelle Lacey, conceded that these condition adjustments would have to be recalculated. Dkt. 93-5 at 13.

Mitchell is not the *only* acceptable measure of ACV. As the Ninth Circuit explained in a similar case, "[s]ome relevant evidence could be in common, but much of it wouldn't be," which means "individual questions predominate." *Lara*, 25 F.4th at 1140.

Plaintiff has no answer to this basic point. She tries to distinguish *Lara* by suggesting (at 31) that the plaintiffs there did not present *any* "common evidence of how to calculate ACV." But as the language just quoted makes clear, the Ninth Circuit assumed that the amount of the disputed adjustment *was* common evidence of ACV. The problem was that it was not the *only* relevant evidence of ACV, so "figuring out whether each plaintiff was injured" would still "be an individualized process." 25 F.4th at 1140. Plaintiff cites minor factual differences between this case and *Lara*, but those differences do not detract from the fundamental principle that just identifying *some* common evidence does not establish predominance when much of the relevant evidence would be individualized.

The district court in *Henson* explained this point in rejecting materially identical claims against Progressive brought by Plaintiff's counsel. As the *Henson* court explained, "the problem with" Plaintiff's

theory that a class can be certified because Plaintiff has offered a common measure of ACV is that "it presupposes that Progressive would not be permitted to offer counterproof of ACV for each class member." 2024 WL 3051264, at *10. *Henson* noted that the courts that have certified similar classes "have glossed over this presupposition." *Id.* But because the policy does not specify a method for calculating ACV, "there are any number of permissible methods for Progressive to present proof of ACV, and due process requires that they have the opportunity to argue in support of those different methods." *Id.* at *11. That opportunity "would manifest in a protracted series of mini-trials for each vehicle," which means that common issues do not predominate. *Id.*

The Fifth Circuit in *Sampson v. United Services Automobile Ass'n*, 83 F.4th 414 (5th Cir. 2023), likewise held that when there are multiple legitimate valuation methodologies, an insurer has a "due process right" to introduce evidence using other methodologies for every vehicle, which means common issues do not predominate. *Id.* at 420. That holding squarely applies here. Plaintiff's evidence of Mitchell valuations would not obviate the need to consider other legitimate valuations. *See id.* at 420-23 (even if plaintiffs' preferred methodology were "an appropriate

21

measure of ACV," their failure to prove that it was "*the* correct measure of ACV" defeated predominance).

As with *Lara*, plaintiff fixates on minor factual differences between this case and *Sampson* that have nothing to do with the central point: that where, as here, there are multiple "legally permissible method[s] of determining ACV," the insurer's due-process right to "argue, for each individual plaintiff," that it paid ACV as "determined by a different legally permissible method" makes class treatment inappropriate. *Id.* at 420. For example, Plaintiff tries (at 33) to distinguish *Sampson* by contending that the plaintiffs there failed to demonstrate that their preferred valuation (NADA values) equaled ACV "in fact." But this conflates *Sampson*'s two distinct holdings. True, the Fifth Circuit held that plaintiffs had "not demonstrated that NADA equates to ACV *in fact*." 83 F.4th at 423. But the court also agreed with the insurer that "even if NADA values could be treated as proof of ACV," plaintiffs' failure to demonstrate that NADA was the *only* legitimate measure of ACV defeated predominance "*as a matter of law*." *Id.* at 420-21, 423. Like the Ninth Circuit in *Lara*, the Fifth Circuit thus held that even assuming plaintiffs' preferred methodology was admissible evidence of ACV, the

existence of other individualized methodologies—and the insurer's due-process right to rely on those other methodologies—created an "explosion of predominance issues" and meant that common issues did not predominate. *Id.* at 420; *see also Bourque v. State Farm Mut. Auto. Ins. Co.*, 89 F.4th 525, 528 (5th Cir. 2023) (reaffirming this principle).

That principle applies here. Plaintiff's expert admits "there is no single methodology to arrive at a proper opinion as to a loss vehicle's actual cash value." A-102. So, as in *Sampson*, Plaintiff "ha[s] failed to put forward evidence or a theory that coherently indicates [Mitchell without PSAs] is *the* measure of ACV" as opposed to one of many measures, which "is a serious concern that cannot be ignored." 83 F.4th at 421.

Next, Plaintiff argues (at 35, 46 n.14, 54) that "guidebook values" like NADA and KBB do not themselves "constitute a valid ACV." True enough—guidebook values are often a starting point for determining ACV and must be adjusted to account for vehicle-specific factors such as condition. But Plaintiff does not dispute that acceptable valuation methods exist that incorporate guidebook values as a starting point. Indeed, her own appraisal expert testified that his determination of a vehicle's "market value" would start with reviewing guidebook

valuations. A-416 (Tr.68:17-69:12). If NADA values are relevant to Plaintiff's expert's ordinary process of determining ACV, they are also relevant to the jury's determination of ACV. That is why multiple courts have cited NADA and KBB as examples of valid alternative methodologies for estimating ACV. *See Henson*, 2024 WL 3051264, at *11 ("There are at least two other ways of estimating ACV—NADA and KBB—both of which Progressive could have used to calculate Plaintiffs' ACV under the Policy …." (quoting *Ambrosio*, 2024 WL 915184, at *7)).

In any event, valuations based on NADA and KBB are not the only alternative methodologies that Progressive can present to show that it properly valued class members' individual vehicles. For example, Plaintiff does not dispute that a valuation is valid if it relies on the actual sold prices for comparable vehicles. *See* Progressive Br. 48, 59 (explaining that Plaintiff conceded as much in the district court). And the evidence shows that PSAs accurately predicted (or over-predicted) actual sold prices at least a third of the time. A-259 ¶ 78. Other acceptable valuation methods also exist, such as those utilizing "independent appraisals." *Henson*, 2024 WL 3051264, at *13. In short, a jury would need to consider

multiple types of valuation evidence to determine whether any class member received less than the ACV of their vehicle.

Finally, Plaintiff argues (at 44) that she should not have to show that Mitchell valuations without PSAs are "the *only* admissible evidence of ACV" to get a class certified, because this would be tantamount to requiring her to prove that she is "entitled to summary judgment." But Plaintiff does not have to show that she is entitled to summary judgment—her burden at class certification is to show that the case could be tried to a jury using predominantly common evidence. That does not necessarily mean that her evidence must be the *only* admissible evidence of ACV. It does, however, mean that class certification is not appropriate where determining ACV would require the jury to weigh a significant amount of individualized evidence specific to each class member. Plaintiff cannot concede (as she has and must) that there are multiple individualized valuation methodologies and still insist that common questions predominate because she has identified *some* common evidence of valuation. Once multiple valuations are in play, the existence of some common evidence will not stop the litigation from devolving into "a

protracted series of mini-trials for each vehicle." *Henson*, 2024 WL 3051264, at *11.

Ignoring these individualized issues at class certification will not make them go away, as the pretrial proceedings in *Volino* demonstrate. The court in *Volino* certified a class based on its legally erroneous view that Plaintiff could use Mitchell valuations without PSAs to avoid individualized ACV inquiries. 2023 WL 2532836, at *9. That error compounded as the litigation continued. Although *Volino* settled before trial, the pretrial motions that were pending before the Court at the time of settlement illustrate that the plaintiffs' claims could not have been manageably tried as a class without depriving Progressive of its right to present defenses to individual claims.

For example, in *Volino*, Progressive sought to contest liability on a number of grounds that required individualized proof, including that "the PSA accurately projected the sold prices of the comparable vehicles in class members' valuation reports" and that "class members received payments from Progressive with PSAs that were equal to or greater than other methods of estimating actual cash value." Defts.' Pretrial Mem. of Law at 8, *Volino*, No. 1:21-cv-6243 (S.D.N.Y. May 31, 2024), Dkt. 360. But

the *Volino* plaintiffs sought to bar these individualized issues from the trial and relegate them to an undefined process "following the jury's verdict." Pls.' Mot. in Limine to Exclude Evidence of Absent Class Members' Claims at 2, *Volino*, No. 1:21-cv-6243 (S.D.N.Y. May 7, 2024), Dkt. 331.

The *Volino* plaintiffs' proposal would have violated Progressive's "due process right … to present individualized defenses if those defenses affect its liability." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 669 (7th Cir. 2015); *see* 1 McLaughlin on Class Actions § 4:19 (20th ed.) ("Using a jury to determine 'liability' without reference to individuals, and then submitting individual claims to an administrator would violate a defendant's constitutional rights by divorcing the liability determination from the individual merits of each class member's claim."). That the *Volino* plaintiffs had no choice but to proceed in this way confirms that the class should never have been certified in the first place. *See Dukes*, 564 U.S. at 367 ("[A] class cannot be certified on the premise that [defendant] will not be entitled to litigate its … defenses to individual claims.").

In sum, individualized valuation evidence is unavoidable in this case for Plaintiff and class members to prove liability. And because individualized inquiries are unavoidable, Plaintiff's own concessions show that class certification is inappropriate. *See, e.g.*, Resp. Br. 28 (admitting that if proof of ACV were not limited to the Mitchell valuations without the PSAs, "class treatment would likely be inappropriate").

## III.  The legitimacy of PSAs is not a common question.

While the lack of predominance is reason enough to reverse, Plaintiff's brief confirms that she cannot even meet the lesser burden of demonstrating that there are "common questions" capable of driving the resolution of this litigation. *Dukes*, 564 U.S. at 350. The district court identified the "legitimacy of PSAs as a means of calculating ACV" as a common question. SA-15 (quotation marks omitted). But as Progressive explained (at 55-62), the evidence shows that there can be no classwide answers to (1) whether the PSAs applied in class members' valuation reports are accurate, or (2) whether the application of PSAs led any class member to be paid less than ACV.

As to the accuracy of PSAs, Plaintiff does not dispute that the prices for which comparable vehicles were actually sold are an appropriate benchmark for ACV. *See* Progressive Br. 59. And the evidence shows that PSAs often accurately predict (or even over-predict) actual sale prices— meaning that even if PSAs could be shown to have been inaccurate for *some* class members, Plaintiff cannot show that PSAs were categorically inaccurate for *all* class members. *Id.* at 58.

Plaintiff responds (at 50) that this is "irrelevant" because she "is not presenting evidence" that the PSAs' predictions were inaccurate for any class member. But if such evidence is *required* for liability—in other words, if the supposedly common question is not really common at all— Plaintiff cannot obtain class certification just by promising not to present that evidence. Otherwise class certification would be a foregone conclusion in every case. That is not the law. In *Dukes*, for example, the plaintiffs were not offering to present evidence "that all the individual, discretionary personnel decisions" applicable to each class member were discriminatory; but because their claims demanded that type of individualized evidence, they failed to establish "the existence of any common question." 564 U.S. at 358-59; *see id.* at 350 (Rule 23 "does not

set forth a mere pleading standard"). The Supreme Court did not simply wave the plaintiffs through to a classwide trial based on their promise not to present individualized evidence.

Plaintiff next tries to dismiss the evidence that PSAs were often accurate (or erred in class members' favor) by claiming (at 51) that this evidence reflects "manipulated data." But Plaintiff's claim of manipulation (which Progressive vehemently disputes) misses the point. What Plaintiff wrongly calls "manipulation" is Mitchell's decision to exclude certain transactions from its dataset. *See* Resp. Br. 8-9, 38. But she has never disputed the accuracy of any of the individual recorded sales prices that Progressive's expert used to evaluate the accuracy of PSAs. Plaintiff cannot deny that PSAs were remarkably accurate as compared to these recorded sales prices.[3] In fact, her own expert acknowledged that the PSAs in particular class members' valuation reports may have been accurate or erred in the class member's favor, and

---

[3] Progressive's expert Dr. Jonathan Walker's conclusions did not meaningfully change when he limited his analysis to vehicles in the J.D. Power Summer 2021 and Fall 2021 datasets—datasets that were not subject to the alleged "manipulation" in that they included transactions where vehicles sold at list price. His analysis limited to these data sets still showed that the PSAs were remarkably accurate. A-259 n.141.

30

that to determine whether this was the case, "you [would] have to look at [class members'] individual circumstance[s]." Dkt. 116-3, Lacey Volino Dep. Tr. 87:1-88:23. So Plaintiff effectively concedes that she cannot prove PSAs are categorically inaccurate.

Trying a different tack, Plaintiff suggests (at 50 n.15) that when PSAs accurately predict or over-predict the actual sold prices of comparable vehicles, it is only because of anomalous circumstances, such as "consumers who happen to be savvy, atypical negotiators [and] can secure a below-market deal." This is pure chutzpah. Plaintiff admits that used cars do *not* always sell for list price and that negotiation *does* sometimes plays a role, contradicting the basic premise of her case. But instead of accepting that such arm's-length negotiations are part of the ordinary process by which market prices are determined, she wants to classify every sale price that results from negotiation as "below-market." Plaintiff cannot gerrymander her way to victory by arbitrarily declaring that negotiated prices are not "market" prices.[4]

---

[4] Plaintiff's reliance on *Signor v. Safeco Insurance Co.*, 72 F.4th 1223 (11th Cir. 2023), for the notion that all negotiated prices are "below-market" is highly misleading. In *Signor*, the plaintiff argued that a Florida statute prohibited insurers from using advertised prices of

Regardless, Plaintiff makes no attempt to quantify how often PSAs' accurate sale-price predictions are due to factors such as super-negotiators persuading experienced dealers to sell cars for below-market prices; much less does she offer evidence that *all* accurate PSA predictions are due to these factors. And whether a particular sale price that a PSA accurately predicted does not reflect market value because the class member was some kind of super-negotiator, or for some other reason, can only be established through an individualized inquiry into each transaction.

As a last resort, Plaintiff returns (at 52) to the argument that "while valuing used autos and calculating ACV may very well be an individual process, it is not an individualized issue *in this litigation*" because Plaintiff intends to rely on the Mitchell valuations without the PSAs as evidence of ACV. As explained above, Plaintiff cannot eliminate

---

comparable vehicles to calculate ACV. The Eleventh Circuit held only that the statute did "not prohibit an insurer from relying on advertised prices in its valuation." *Id.* at 1230. It did not hold that insurers were *required* to use advertised prices or that reliance on actual sold prices would be impermissible. And while the court briefly mused that a vehicle might sell for less than its true value because "the buyer was a particularly good negotiator," *id.* at 1231, it did not endorse the bizarre notion that *all* negotiated prices are "below-market."

individualized issues by insisting that she will rely only on common valuation evidence, because due process entitles Progressive to present individualized valuation evidence for every class member. Plaintiff "do[es] not get to *impose* legal theories on [Progressive] and select [its] legal defenses for [it]." *Henson*, 2024 WL 3051264, at *10.

In sum, both the accuracy of PSAs and whether Progressive underpaid ACV are individualized questions with answers that will vary from class member to class member. With no evidence that PSAs uniformly under-predicted sale prices, the district court erred as a matter of law in holding that the "legitimacy of PSAs" was a common question. SA-15 (quotation marks omitted).

## IV. There is a fundamental intraclass conflict and Plaintiff is not an adequate representative.

As Progressive explained (at 62-66), the district court also erred by overlooking a fundamental intraclass conflict arising from the fact that a third of the class benefitted from the Mitchell valuations (including PSAs) as compared to other legitimate methodologies for calculating ACV that Progressive was permitted to use. The district court's failure to recognize this conflict flowed from its more pervasive error of ignoring Progressive's due-process right to introduce alternative valuations to

prove it paid each class member ACV. *See, e.g.*, *Sampson*, 83 F.4th at 420-23; *Henson*, 2024 WL 3051264, at \*10-11.

Plaintiff's assertion that "all class members would receive more" if the PSA is held invalid, Resp. Br. 53 (quoting SA-19), is true only if one accepts Plaintiff's false premise that no alternative valuation methods may be considered. Otherwise, the fact that some class members are better off because of the Mitchell valuations (including the PSAs) as compared to other valuations undermines Plaintiff's classwide theory of liability and means that adequacy is "doomed." *Prudhomme v. GEICO*, 2022 WL 510171, at \*1 (5th Cir. Feb. 21, 2022) (per curiam). As already explained, the Court should reject that premise. The policy requires only that Progressive pay ACV as determined by market value, age, and condition. As Plaintiff has conceded, any number of valuation methodologies would be legitimate under that policy.

Nor is Plaintiff an adequate representative for the class. As described above, Plaintiff conceded that Progressive could determine ACV using the actual sold prices of comparable vehicles. And as Progressive explained (at 65), Plaintiff would have been paid less if Progressive had relied only on the four actual sale prices in her valuation

report instead of using the Mitchell valuation. Plaintiff says Progressive didn't make this point below, but she is wrong. *See* Dkt. 109 at 4 ("Had Progressive relied on only the four sales prices in her report, Schroeder would have been paid less."). And her suggestion that Progressive could not "have *actually* valued Plaintiff's vehicle in this way" betrays her misunderstanding of the range of valuation methodologies permitted under the policy, which does not specify which factors may be considered in determining ACV or market value. A valuation method that used actual sale prices to determine market value would be just as legitimate under the policy as the Mitchell valuation, NADA, or any other appraisal method.

## CONCLUSION

This Court should reverse the class-certification order.

Respectfully submitted,

*/s/Jeffrey S. Cashdan*

Paul Alessio Mezzina
Amy R. Upshaw
Christine Carletta
KING & SPALDING LLP
1700 Pennsylvania Avenue NW
Washington, DC 20006

Julia C. Barrett
KING & SPALDING LLP
500 West 2nd Street, Ste. 1800
Austin, TX 78701

Nicole Bronnimann
KING & SPALDING LLP
1100 Louisiana Street, Ste. 4100
Houston, TX 77002

Jeffrey S. Cashdan
Zachary A. McEntyre
James Matthew Brigman
Allison Hill White
Erin Munger
KING & SPALDING LLP
1180 Peachtree Street NE
Suite 1600
Atlanta, GA 30309
(404) 572-4600
jcashdan@kslaw.com

*Counsel for Defendants-Appellants*

July 22, 2024

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) and Circuit Rule 32(c) because it contains 6,988 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word for Office 365 ProPlus in Century Schoolbook 14-point font, a proportionally spaced typeface.

Date: July 22, 2024

/s/ *Jeffrey S. Cashdan*
Jeffrey S. Cashdan

*Counsel for Defendants-Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that on July 22, 2024, a copy of the foregoing document was filed with the Court through the ECF system, which provides electronic service of the filing to all counsel of record who have registered for ECF notifications in this matter.

*/s/ Jeffrey S. Cashdan*
Jeffrey S. Cashdan

*Counsel for Defendants-Appellants*