

**Jacobson Phillips PLLC**
478 E. Altamonte Dr., Ste. 108-570
Altamonte Springs, FL 32701
jacob@jacobsonphillips.com

December 17, 2024

Office of the Clerk
U.S. Court of Appeals for the Seventh Circuit
Everett McKinley Dirksen United States Courthouse
219 S. Dearborn Street
Room 2722
Chicago, IL 60604

Re:     No. 24-1559, *Heather Schroeder, et al v. Progressive Paloverde Insurance Company, et al*.

Clerk of the Court:

Pursuant to Rule 28(j), Plaintiff files *Knight v. Progressive Nw. Ins. Co.*, 2024 U.S. Dist. LEXIS 222207 (E.D. Ark. Dec. 9, 2024) (**Exhibit 1**). *Knight* is the twelfth court to certify claims materially identical to those here. Resp. Br. at 12. An abuse of discretion occurs when "no reasonable person" could agree with the court's decision. *Knight* further demonstrates there was no abuse here.

In *Knight*, as here, Progressive's Policy required it to determine ACV based on "market value, age, and condition[.]" Exh. 1 at 9. *Knight* recognized the plaintiff presented common evidence "that using Progressive's method of relying on the Mitchell reports—but absent any PSA deductions—would result in a proper determination of ACV" under the prescribed formula. Exh. 1 at 3. This illustrates why *Kartman v. State Farm Mut.*, 634 F.3d 883 (7th Cir. 2011) is inapposite.

The *Kartman* plaintiffs lacked common evidence of roofing repair costs and, to skirt this problem, sought equitable relief. The district court rejected class certification because there was no common issue, let alone a predominating one (and this Court rejected the "injunctive relief" end-around). Here, Plaintiff need not seek extracontractual relief because she *has* presented common evidence of breach—violation of the duty to determine "market value"—and resultant damages—that "removing the PSA deductions will yield a contractually sound ACV from which individual damages can be ascertained." Exh. 1 at 6. Progressive disagrees and primarily defends the PSA as proper. If a jury agrees, Progressive will receive a classwide verdict.

This brings us to whether Progressive's *secondary* defense—that even if the PSAs were improper, the breach is absolved (somehow) if NADA produced a lower value—raises predominating individualized issues. Again and again, district courts tethered to the record have found that defense does not predominate. NADA guidebook values do not meet the definition of ACV *Progressive chose* in its Policies. The district court was on firm evidentiary footing in rejecting that unsupported defense. Twelve jurists throughout the country have concluded potential individual issues do not predominate and they can manage a class trial of this dispute. There was no abuse of discretion.

*/s/ Jake Phillips*
Jacob L. Phillips, Esq.

## CERTIFICATE OF COMPLIANCE

I certify that this letter complies with the limitations set forth in Fed. R. App. P. 28(j), because the letter states the reason for submitting the supplemental authority and contains 357 words.

*/s/ Jake Phillips*
Jacob L. Phillips, Esq.

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

**ERIK KNIGHT, individually and on behalf
of others similarly situated,**                                                                    **PLAINTIFF**

vs.                               Case No. 3:22-CV-203-JM

**PROGRESSIVE NORTHWESTERN
INSURANCE COMPANY**                                                                                **DEFENDANT**

## ORDER

This is a purported class action challenging Progressive Northwestern Insurance Company's calculation of the actual cash value of an insured's car after it was declared a total loss. Pending is Plaintiff's motion for class certification (Doc. No. 41). The motion has been fully briefed and a hearing was held in May of this year. The parties have filed four separate notices of supplemental authority.[1] For the reasons stated below, the Court grants Plaintiff's motion for class certification.

### Background

Erik Night owned a 2001 Chevrolet Silverado truck that was involved in an accident on August 28, 2020. He was insured by Progressive who determined that his truck was a total loss. His policy required Progressive to determine the actual cash value (ACV) of his vehicle by its "market value, age, and condition" at the time of loss. Progressive uses a valuation report provided by a third party, Mitchell International, Inc. ("Mitchell") to determine a vehicle's ACV. The Mitchell reports are created using its WorkCenter Total-Loss ("WCTL") database to identify comparable vehicles for sale in the insured's geographic area. Once these comps are identified, the report adjusts the advertised price of these vehicles to account for differences in equipment,

---

[1] Doc. Nos. 63, 66, 107, and 125.

mileage, and vehicle configuration. In addition to these adjustments, which Plaintiff does not challenge, Mitchell then applies a deduction in the form of a Projected Sold Adjustment (PSA). These PSAs are explained in the report as "an adjustment to reflect consumer purchasing behavior (negotiating a different price than the listed price)." (Exhibit B to Plaintiff's complaint, Doc. No. 1, p.63). In the Mitchell report created for Plaintiff's truck, two of the four comparable vehicles were listed for sale locally and were adjusted downward with PSAs in the amounts of $728 and $841 respectively. [2] Plaintiff claims that applying these PSAs is an arbitrary and unjustified practice that is contrary to appraisal standards in the industry and as such is a breach of the insurance policy. He claims he was damaged in the amount of $392.25 by the wrongful application of the PSAs. Plaintiff filed suit for breach of contract and for declaratory judgment.

The only aspect of Progressive's method of calculating ACV challenged by Plaintiff is the PSA deduction. Otherwise, he and his experts agree that the Mitchell report produces an ACV that complies with the policy. Plaintiff seeks certification of the following class on his breach of contract claim:[3]

> All persons who made a first-party claim on a policy of insurance issued by Progressive Northwestern Insurance Company to an Arkansas resident where the claim was submitted from August 4, 2017, through the date an order granting class certification is entered, and Progressive determined that the vehicle was a total loss and based its claim payment on an Instant Report from Mitchell where a Projected Sold Adjustment was applied to at least one comparable vehicle.

(Doc. No. 41, p.9).

In support of his motion for certification, Plaintiff relies on the deposition of Progressive

---

[2] The price of a comparable vehicle that has recently sold, on the other hand, does not have a PSA applied.

[3] This definition differs slightly from that put forth in the complaint (Doc. No. 1, ¶ 49). In his reply in support of his motion, Plaintiff says that this definition "varies marginally from the class definition in the Complaint, with such changes obviating semantic definition-focused arguments raised in parallel actions." (Doc. No. 51, fn 1.). Defendant did not take issue with the definition modification in its response.

claims director John Retton;[4] the deposition of Progressive's corporate representative Michael Silver;[5] the deposition of Mitchell's corporate representative Philip Kroell;[6] the expert report of statistician Dr. Michelle Lacey; the expert report of Kirk Felix on the subject of the used car industry; the expert report of personal property appraiser Jason Merritt; and the deposition of a J.D. Power corporate representative Blaine Bogus; the expert report of statistician Jeffrey Martin; and the declaration of Hank Bates on behalf of Plaintiff's attorneys. (Doc. No. 41, Exhibits 2, 4-5, 7-12). Following the close of briefing on the motion for class certification, Progressive moved to strike portions of the testimony of Plaintiff's experts Lacey, Felix, Merritt, and Martin. The Court has reviewed the pending motions to strike (Doc. Nos. 80, 81, 83, and 84) and, regardless of the Court's later determination of the admissibility of the various portions of challenged testimony, is convinced that it has "an adequate record on which to base its ruling" on class certification. *Cody v. City of St. Louis for & on behalf of Medium Sec. Inst.*, 103 F.4th 523, 535 (8th Cir. 2024) (quoting *Miller v. Baker Implement Co.*, 439 F.3d 407, 413 (8th Cir. 2006).[7] On the face of each of its Daubert motions, Defendant requested a hearing on the motion. This will be set by separate order.

Class Action Requirements

It is Plaintiff's responsibility as the party seeking class certification to prove that his proposed class is "adequately defined and clearly ascertainable" and also meets the explicit requirements of Federal Rule of Civil Procedure 23. *Sandusky Wellness Ctr., LLC v. Medtox Sci.,*

---

[4] Taken in *Drummond, et al. v. Progressive Specialty Ins. Co., et al.*, No. 5:21-cv-04479-EGS (E.D. Pa.).
[5] Taken in *Volino v. Progressive Cas. Ins. Co.*, 1:21-cv-06243-LGS (S.D.N.Y.).
[6] *Id.*
[7] Neither party has asked the Court to make the Daubert determinations prior to entering an order on class certification.

3

*Inc.*, 821 F.3d 992, 996 (8th Cir. 2016); *Stuart v. State Farm Fire & Cas. Co.*, 910 F.3d 371, 374–75 (8th Cir. 2018). This includes Rule 23(a)'s threshold requirements of numerosity, commonality, typicality, and adequacy, and proof that the class fits within one Rule 23(b)'s three subsections. *Stuart* at 374. Plaintiff is seeking to have the class certified pursuant to Rule 23(b)(3), which requires a finding "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Numerosity. Plaintiff easily meets the numerosity requirement. Progressive produced claims data showing thousands of potential class members. (Doc. No. 41-7 at 12). Joinder of all affected persons is impracticable. This objective claims data evidence also establishes that the class is ascertainable. *Sandusky Wellness Ctr. v. Medtox Sci., Inc.*, 821 F.3d 992, 997-8 (8th Cir. 2016).

Commonality and predominance. To establish commonality requires a plaintiff to demonstrate that there is "a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). In the case of a plaintiff seeking class certification based on Rule 23(b)(3), "[p]redominance subsumes the commonality requirement, so both can be analyzed through the lens of predominance." *Custom Hair Designs by Sandy v. Cent. Payment Co., LLC*, 984 F.3d 595, 601 (8th Cir. 2020) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 609 (1997)).

Predominance gauges "the relationship between common and individual questions in a

4

case." *Id.* (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)). "An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof." *Tyson Foods* at 453 (quotation omitted). "[T]he action may be considered proper under Rule 23(b)(3) even though other important [non-common] matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Id.* (quoting 7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure, § 1778, pp. 123–124 (3d ed. 2005).

To establish a breach of contract under Arkansas law, Plaintiff must prove the existence of a contract, an obligation of Progressive under the contract, a breach of that obligation, and damages. *Stuart v. State Farm Fire & Cas. Co.*, 910 F.3d 371, 375 (8th Cir. 2018) (citing *Farris v. Conger*, 512 S.W.3d 631, 634 (Ark. 2017)). It is undisputed that Plaintiff and the proposed class were parties to insurance policies with Progressive. It is also undisputed that Progressive had an obligation to pay "the actual cash value of . . . . the damaged property at the time of the loss reduced by the applicable deductible."[8] (Doc. 41-3 at 26). The policy states that "[t]he actual cash value is determined by the market value, age, and condition at the time the loss occurs." (Doc. 41-3 at 27).

Plaintiff's complaint raises two common questions regarding the other two elements needed to prove breach of contract. One is whether Progressive breached its contract by calculating an "artificially reduced" ACV when it deducted the PSA from comparable vehicles.

---

[8] The policy limits liability for loss to "the lowest of" the ACV at the time of the loss, the replacement cost, the repair cost, or the amount shown in the declarations page. The parties confine their arguments to the ACV option.

Plaintiff's appraisal expert, Jason Merritt, gives the opinion that the negotiation adjustment reflected in the PSA is inconsistent with industry appraisal standards. Whether a jury would agree that this practice is a breach of the contract, the answer to this common question will resolve the element of breach. The other common question relates to damages for this alleged breach. Plaintiff asserts that using Progressive's method of relying on the Mitchell reports—but absent any PSA deductions—would result in a proper determination of ACV. This damages model is consistent with Plaintiff's theory of liability. As Judge Marshall said, "[a]t the class certification stage, the question is not whether a jury will credit the evidence and agree with the damages model, but whether the model is common to the class." *Chadwick v. State Farm Mut. Auto. Ins. Co.*, No. 4:21-CV-1161-DPM, 2024 WL 1156944, at *3 (E.D. Ark. Mar. 18, 2024).

Progressive argues that even if the propriety of applying the PSA is a common question, it does not predominate as the answer will not drive the resolution of the case. It frames the central question as whether Progressive paid Plaintiff and each prospective class member the ACV of their vehicles, a highly individualized question. But Plaintiff has explicitly focused this action on the legal theory that applying PSA deductions is a breach of the parties' contract to determine ACV and removing the PSA deductions will yield a contractually sound ACV from which individual damages can be ascertained. "The viability of this theory is a common question well suited to classwide resolution." *Stuart v. State Farm Fire & Cas. Co.*, 910 F.3d 371, 375 (8th Cir. 2018). "A class may be certified based on common issues even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Id.* at 374–75 (cleaned up). In reaching its conclusion, the Court is persuaded by the reasoning of other district courts that have found the predominance requirement satisfied in spite of the necessity of individualized damage calculations. *See*

*Clippinger v. State Farm Mut. Auto. Ins. Co.*, No. 220CV02482TLPCGC, 2023 WL 7213796, at *8–9 (W.D. Tenn. Aug. 25, 2023); *Volino v. Progressive Cas. Ins. Co.*, No. 21 CIV. 6243 (LGS), 2023 WL 2532836, at *8–11 (S.D.N.Y. Mar. 16, 2023); *Schroeder v. Progressive Paloverde Ins. Co.*, 713 F. Supp. 3d 523, 535–36 (S.D. Ind. 2024); and *Chadwick, at *3*.

Progressive argues that the Court is compelled to reach a different conclusion by the Eighth Circuit's decisions in *In re State Farm Fire & Cas. Co.*, 872 F.3d 567 (8th Cir. 2017) ("*LaBrier*") and *Stuart*. After careful consideration, the Court disagrees. Both cases were brought as class actions by homeowners who had replacement-cost homeowner's insurance policies with State Farm and suffered a loss. *LaBrier* was brought by Missouri homeowners, so Missouri law applied, while Arkansas law applied in *Stuart*. In both cases, prior to the repair work being undertaken, the policies obligated State Farm to pay homeowners the ACV of the damaged property at the time of the loss. In both cases State Farm had a practice of deducting the depreciation of labor and material in its initial estimate of ACV.[9] Then, once the repairs were complete, the insured could seek additional benefits under the policies if the final repair costs exceeded the initial ACV payment. In both *LaBrier* and *Stuart*, plaintiffs challenged State Farm's practice of depreciating labor costs when it estimated the initial ACV. In *Labrier,* "[t]he policy contains no explanation of how State Farm calculates ACV, nor any definitions of ACV or depreciation" *Labrier v. State Farm Fire & Cas. Co., 315 F.R.D. 503, 509 (W.D. Mo. 2016), rev'd sub nom. In re State Farm Fire & Cas. Co., 872 F.3d 567 (8th Cir. 2017).* In both cases the district courts found that the common questions predominated and certified the class, and State Farm appealed the certifications.

---

[9] At the relevant times, State Farm used software called Xactimate to estimate the cost of each item necessary for repair to which the software applied depreciation using an established formula which included by materials and labor depreciation.

In *LaBrier*, the Eighth Circuit reversed the decision of the Missouri district court to certify the class. The Court began its analysis with the conclusion "that State Farm's method of determining estimated "actual cash value" does not breach its replacement cost contract []." *LaBrier* at 573. The Court found error in the district court's determination that the terms ACV and depreciation, neither of which were defined in the policy,[10] were ambiguous. The opinion emphasized the importance of the fact that State Farm was *estimating* an *initial* actual cash value payment of the depreciated property at the time of the loss. The Court found State Farm's method of estimation was reasonable and consistent with indemnity principles and concluded that plaintiff had failed to establish that common questions predominated and that a class action was a superior method of adjudicating the claims.

The Eighth Circuit held its decision in *Stuart* pending the outcome of *LaBrier*. *Stuart* at 373. The Eighth Circuit was faced with the nearly identical proposed common question in *Stuart*—did State Farm violate its contractual obligations by depreciating both materials and labor when calculating ACV, thereby reducing the size of plaintiff's ACV payments. This time the Court recognized the "viability of this theory as a common question well suited to classwide resolution." *Stuart* at 375. The landscape was different in Arkansas. The Arkansas Supreme Court had previously determined in *Adams v. Cameron Mut. Ins. Co.*, 430 S.W.3d 675 (Ark. 2013) that insurers were prohibited from depreciating the costs of labor when calculating ACV payments.[11] *Stuart* at 376. The Eighth Circuit acknowledged that the district court had

---

[10] While the Court found that the policy itself does not define actual cash value, it acknowledged that "State Farm provides insureds a 'Building Estimate Summary Guide' that explains, 'Net Actual Cash Value Payment' means '[t]he repair or replacement cost of the damaged part of the property less depreciation and deductible,' and defines 'depreciation' as '[t]he decrease in the value of property over a period of time due to wear, tear, condition, and obsolescence.'" *LaBrier* at 570–71.

[11] The *Adams* case was before the Arkansas Supreme Court on a question certified to it by the Western District of Arkansas: "Whether an insurer in determining the "actual cash value" of a

"previously concluded that these allegations stated a claim for breach of contract under *Adams*" and that issue was not before it on that limited appeal. *Id* at 375–76. The Court found that, unlike in *LaBrier*, the policy before it "specified the method for calculating ACV payments" as being "the amount it would cost to repair or replace damaged property, less depreciation" which it described as a "prescribed formula." *Stuart* at 376.

To the extent that *LaBrier* and *Stuart* are relevant to this Court's determination of whether Plaintiff has established that a common question predominates, the Court finds *Stuart* more instructive. The Progressive policy specifies that "the actual cash value is determined by the market value, age, and condition at the time the loss occurs."

<u>Typicality and adequacy.</u> Turning to the typicality and adequacy requirements, the Court finds that both are satisfied here. "The typicality and adequacy criteria serve as 'guideposts' for determining whether "maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Golan v. Veritas Ent., LLC*, 788 F.3d 814, 821 (8th Cir. 2015) (quoting *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 626 n. 20 (1997)). Rule 23(a)(3) requires that "the claims or defenses of the representative parties (be) typical of the claims or defenses of the class." This requirement is generally considered to be satisfied "if the claims or defenses of the representatives and the members of the class stem from a single event or are based on the same legal or remedial theory." *Paxton v. Union Nat. Bank*, 688 F.2d 552, 561–62 (8th Cir. 1982) (quoting C. Wright & A. Miller, Federal Practice and Procedure s 1764 at n.21.1 (Supp.1982)). The typicality requirement "is fairly easily met so long

---

covered loss under an indemnity insurance policy may depreciate the costs of labor when the term "actual cash value" is not defined in the policy." *Adams*, 430 S.W.3d at 676.

9

as other class members have claims similar to the named plaintiff." *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995) (citation omitted).

Progressive argues that Plaintiff's claims are atypical because he was in fact paid more even with the PSA deductions "than he would have been paid using another permissible valuation method under Arkansas law." (Doc. No. 46, p. 29). Whether Progressive could have calculated his ACV less favorably had it chosen another method is not relevant to the claim he has chosen to pursue on behalf of the class—that the method used by Progressive across the class was in breach of its policy.  With this focused claim, the Court is not persuaded that Plaintiff's appointment create an interclass conflict, as Progressive argues, between those members who benefitted by Progressive's method of determining ACV versus those who suffered damages. Progressive also expressed concerns that Plaintiff is ignoring potentially valuable claims class members could pursue by focusing only on the PSAs. However, as with any action brought pursuant to Rule 23(b)(3), potential class members can opt out of the class if they choose to pursue other claims for relief.

As discussed above, Plaintiff's claim that Progressive breached the contract by determining ACV using PSA deductions is based on the same legal theory as those of the class. Likewise, his claim that backing out the PSA deductions would yield a non-breaching ACV is the same damages model proposed for the class.  The evidence submitted in support of Plaintiff's motion for class certification regarding the identical policy language, Progressive's uniform practice of accepting the PSA deductions to total-loss claims, and the handling of his own claim demonstrate that his claim is typical of the that of the proposed class.

For these same reasons that he satisfies the typicality requirement, the Court finds that Plaintiff has demonstrated that he can fairly and adequately protect the class members' interests

as required by Rule 23(a)(4). He has submitted evidence that he qualifies as a member of the class and that he has suffered the same injury for which he seeks recovery on behalf of the class. The declaration of Hank Bates (Doc. No. 41-12) shows that he has retained competent counsel experienced in prosecuting class actions, counsel whose qualifications have not been challenged by Progressive. The Court therefore appoints Plaintiff as class representative and appoints his lawyers as class counsel.

       <u>Superiority.</u> Finally, in addition to the predominance requirement discussed above, Rule 23(b)(3) also requires that a plaintiff must establish that a class action is the superior method to adjudicate the controversy. "Class actions are superior when 'the class members' claims are generally small and unlikely to be pursued individually.'" *Custom Hair Designs by Sandy v. Cent. Payment Co., LLC*, 984 F.3d 595, 605 (8th Cir. 2020) (quoting *Stuart v. State Farm Fire & Cas. Co.*, 910 F.3d 371, 377 (8th Cir. 2018)). Plaintiff has submitted evidence that his damages are less than $400.00. In her report, Plaintiff's statistician expert Dr. Lacey found that of the 148 sample claim files she reviewed, 146[12] applied PSAs to one or more comparable vehicles. (Doc. No. 41-7). The average adjustment for these claims was under $600. *Id.* The Court finds that potential awards in these small amounts would make individual litigation cost prohibitive. And while there are a number of very similar actions relating to PSA pending against Progressive in other circuits, the Court has not been made aware of any cases competing with the claims of this proposed class of Arkansas residents. Plaintiff has convinced the Court that a class action is the superior method for proceeding with this action.

---

[12] There may be a typographical error on page 13 of the report making it unclear if there were 146 or 144 claims that had PSAs applied, but this does not impact the Court's analysis.

Therefore, Plaintiff's motion to certify the class (Doc. No. 41) is GRANTED.

IT IS SO ORDERED this 9th day of December, 2024.

                                                  _____
                                                  United States District Judge